# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| MAHINDER SINGH, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 10-1615 (RC) |
| | : | | |
| v. | : | Re Document No.: | 12 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the court on the defendants' motion to dismiss, or in the alternative, for partial summary judgment.  The plaintiff is an individual who brings claims against the District of Columbia Metropolitan Police Department ("MPD") and three of its police officers.  According to the plaintiff, one of the defendant police officers enlisted the other defendant officers to engage in a harassment and intimidation campaign against him.  The plaintiff alleges claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), contending that the defendants violated his Fourth and Fifth Amendment rights, and also alleges common-law claims against some of the defendants.  The defendants move to dismiss some of the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), asserting that he has failed to state any valid claim for relief.  In the alternative, the defendants move for summary judgment as to the plaintiff's common-law claims under Federal Rule of Civil Procedure 56.  For the reasons discussed below, the court grants in part and denies in part the defendants' motion.

## II.  FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND[1]

The plaintiff is an individual who, in January of 2009, was introduced by a mutual friend to one

of the defendant officers, Raj K. Dohare.  Am. Compl. ¶ 7.  The plaintiff and Officer Dohare are from

the same region of India and they soon became close friends.  *Id.*  The plaintiff's apartment was close

to the police headquarters to which Officer Dohare was assigned, and Officer Dohare would frequently

stop by the plaintiff's home to socialize, sometimes bringing other officers.  *Id.* ¶ 8.  In March of 2009,

Officer Dohare and one of his colleagues were "casually conversing" with the plaintiff at his home,

when the plaintiff used mild profanity during the discussion.  *Id.* ¶ 9.  Officer Dohare "became

extremely incensed" that the plaintiff had used profanity in his presence, and stated that although he

had been the plaintiff's friend, he would now "become his worst enemy."  *Id.* ¶¶ 10–11.

According to the plaintiff, Officer Dohare abused his police authority and began harassing,

baselessly citing, and falsely accusing him of violations and crimes.  *Id.* ¶ 12.  Officer Dohare and two

of his colleagues issued the plaintiff five "bogus" traffic tickets, all of which were dismissed.  *Id.* ¶ 13.

On April 2, the plaintiff was issued a $500 ticket for excessive idling, which he never received and that

consequently doubled.  *Id.* ¶ 14.  On April 12, the plaintiff was issued but did not receive a parking

ticket, which eventually doubled.  *Id.* ¶ 16.  On April 20, he received a ticket for failure to give a turn

signal, despite having given the proper signal.  *Id.* ¶ 19.

In May of 2009, the plaintiff reported the harassment to an MPD supervisor at the police station

where Officer Dohare works.  *Id.* ¶ 22.  The plaintiff claims that "absolutely nothing happened,"

however, and that the harassment and intimidation continued.  *Id.*  In June of 2009, the plaintiff again

reported the harassment, this time to the Office of Police Complaints, but no action was taken.  *Id.* ¶

---

[1]     When considering a Federal Rule 12(b)(6) motion to dismiss, the court accepts as true the plaintiff's
version of events.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

23.  Later that month, the plaintiff reported the harassment to an MPD supervisor at Officer Dohare's station, but nothing was done.  *Id.* ¶ 24.

On July 19, the plaintiff received a ticket for making a U-turn in an area that allows such turns.  *Id.* ¶ 27.  On August 1, the plaintiff was issued a ticket for an obstructed rear tag, even though the tag was not obstructed.  *Id.* ¶ 29.  The plaintiff contends that he had to take time off of work to attend two separate DMV hearings and have the citations dismissed.  *Id.* ¶¶ 17, 20.

On August 4, 2009, the plaintiff left his apartment with a friend, sat in the passenger seat of the friend's car, and began riding with him.  *Id.* ¶ 32.  One of the defendant officers was waiting nearby, and pulled the car over "for no ostensible reason."  *Id.*  The officer asked if the plaintiff's friend had been drinking, despite there having been no traffic violation or other reason to justify a stop.  *Id.*  Officer Dohare then arrived on the scene and told the plaintiff to walk back home.  *Id.* ¶ 33.  After the plaintiff indicated that he was going to call a friend to take him home, Officer Dohare put on rubber gloves and arrested the plaintiff.  *Id.*  The plaintiff was charged with resisting arrest, disorderly conduct, making threats, and assault on a police officer, which is a felony.  *Id.* ¶ 34.  At trial, the defendant officer who had pulled the car over testified that the basis for the stop was that a small bell hung from its interior rearview mirror.  *Id.* ¶ 36.  The plaintiff was acquitted of all charges, and the judge was moved to point out in open court that Officer Dohare was not credible.  *Id.* ¶ 38.

The plaintiff expended $15,000 in legal fees behind the trial, and the harassment caused him worry, anxiety, and extreme emotional disturbance.  *Id.* ¶¶ 35, 39.  In particular, he suffered serious mental and emotional distress because the potential felony conviction exposed him to the possibility of deportation.  *Id.* ¶ 66.  The plaintiff now brings suit in this court against the defendant officers and the District of Columbia ("District"), alleging violations of his Fourth and Fifth Amendment rights, pursuant to 42 U.S.C. § 1983.  In addition, the plaintiff alleges a common-law claim of malicious

3

prosecution against Officer Dohare and the District, as well as claims of intentional infliction of

emotional distress ("IIED") and abuse of process against the three defendant officers.  The plaintiff

seeks compensatory damages, punitive damages, and attorneys' fees.  In response, the defendants have

filed a motion to dismiss, or in the alternative, for summary judgment as to the common-law claims.

The court now turns to the parties' arguments and the applicable legal standards.

### III.  ANALYSIS

#### A.  Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency

of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The motion does not test a

plaintiff's ultimate likelihood of success on the merits, but rather, whether a plaintiff has properly

stated a claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The complaint is only required to set

forth a short and plain statement of the claim, in order to give the defendant fair notice of the claim and

the grounds upon which it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C.

Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A court considering this type of motion presumes the factual allegations of the complaint to be

true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*,

116 F. Supp. 2d 131, 135 (D.D.C. 2000).  It is not necessary for the plaintiff to plead all elements of

his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002), or to

plead law or match facts to every element of a legal theory, *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.

Cir. 2000) (internal citations omitted).  Nonetheless, "[t]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face."  *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 562 (2007).  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### B.  Legal Standard for a Rule 56 Motion for Summary Judgment

Because the court will rely on documents outside of the pleadings to resolve some of the defendants' arguments, with respect to such arguments, the defendants' 12(b)(6) motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56. *Colbert v. Potter*, 471 F.3d 158, 164 (D.C. Cir. 2006); FED. R. CIV. P. 12(d).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in

the nonmoving party's favor and accept the nonmoving party's evidence as true. *Id.* at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### C. IIED and Abuse of Process Claims

#### 1. Statute of Limitations

The defendants assert that the plaintiff's IIED and abuse of process claims are barred by the statute of limitations. Defs.' Mot at 12-13. Under D.C. Code § 12-301(4), intentional torts such as malicious prosecution have a statute of limitations of one year. *Wiggins v. State Farm Fire & Cas. Co.*, 153 F. Supp. 2d 16, 20 (D.D.C. 2001). For a malicious prosecution claim, the statute of limitations begins to run when the underlying action against the plaintiff terminates in his favor. *Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 699 (D.C. Cir. 2009). By contrast, common-law torts that do not have a prescribed statute of limitations have a three-year residual statute of limitations under D.C. Code § 12-301(8). *Id.* Yet if such claims are intertwined with an intentional tort that is delineated in D.C. Code § 12-301(4), they are subject to the same one-year statute of limitations as that intentional tort. *Mittleman v. United States*, 104 F.3d 410, 415 (D.C. Cir. 1997). A claim is considered intertwined with another when it is completely dependent upon or essentially the same as the other tort, and when it cannot survive as a separate, independent cause of action. *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 48 (D.D.C. 2006).

In this case, the plaintiff's IIED and abuse of process claims have a three-year statute of limitations. *Nader*, 567 F.3d at 699 (abuse of process); *Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d

79, 86–87 (D.D.C. 2000) (intentional infliction of emotional distress).  Yet because they "encompass[]

the[] same events" as and are dependent upon the alleged malicious prosecution, they can be

considered intertwined with this claim.  *Bradley v. Nat'l Ass'n of Sec. Dealers Dispute Resolution*, 245

F. Supp. 2d 17, 23 (D.D.C. 2003); *Rynn v. Jaffe*, 457 F. Supp. 2d 22, 24 (D.D.C. 2006) (determining

that the plaintiffs' IIED claim was intertwined with their intentional tort claims because all of the

claims stemmed from the same conduct).  The plaintiff's IIED and abuse of process claims thus have a

one-year statute of limitations, as well.  Because the plaintiff's malicious prosecution claim accrued

when he was acquitted on May 26, 2010, *see* Am. Compl. ¶ 38, he had until May 26, 2011 to bring

these three claims.  As the plaintiff filed suit on March 29, 2011, these claims fall within the one-year

statutory period and are therefore considered timely.

To the extent that any of the plaintiff's IIED or abuse of process claims can be considered

completely independent of the malicious prosecution claim, such claims derive from the traffic stops

and citations before the August 2009 arrest and later trial, and are subject to the three-year statute of

limitations.  Because the five traffic tickets were issued between April and August of 2009, the

plaintiff had until April through August of 2012 to bring such claims.  His filing suit on March 29,

2011 ensures that these claims are within that period and thus timely.

### 2.  Notice Requirement

The defendants contend that the plaintiff's IIED and abuse of process claims are barred because

they fail to comply with the notice provisions of D.C. CODE § 12-309.  Defs.' Mot. at 11.  Under D.C.

CODE § 12-309, anybody who brings suit for unliquidated damages against the District must give

written notice to the mayor within six months of the injury, providing the approximate time, place,

cause, and circumstances of the injury or damage.  This requirement is a prerequisite to filing suit

against the District "because it represents a waiver of sovereign immunity."  *Faison v. District of*

*Columbia*, 664 F. Supp. 2d 59, 68 (D.D.C. 2009) (internal citation omitted).  Only two types of notice can satisfy this provision:  (1) written notice to the mayor, or (2) a police report prepared in the regular course of duty.  *Blocker–Burnette v. District of Columbia,* 730 F. Supp. 2d 200, 204 (D.D.C. 2010).  The purpose of this requirement is to "provide an early warning to District of Columbia officials regarding litigation likely to occur in the future."  *Johnson*, 572 F. Supp. 2d at 111.  It also "permit[s] the District to conduct an early investigation of the facts and circumstances surrounding such claims."  *Mazloum v. D.C. Metro. Police Dep't*, 522 F. Supp. 2d 24, 49 (D.D.C. 2007).

The plaintiff sent notice of his claims to the mayor by letter on July 26, 2010.  Defs.' Mot., Ex. 2.  The defendants argue, however, that because the July 26, 2010 letter was sent more than six months after the April 2009–August 2009 traffic stops and citations, any claims arising out of these incidents are barred.  *Id.*

Although the plaintiff's letter was outside of the requisite six-month period, the plaintiff did file three complaints regarding the traffic stops and citations with the MPD before that.  Specifically, he filed a complaint with an MPD supervisor in May of 2009, then one with the Office of Police Complaints in June of 2009, and then another complaint with an MPD supervisor in June of 2009.  Am. Compl. ¶¶ 23–24.  "[T]he inquiry with respect to a police report's capacity to satisfy Section 12–309's notice obligation is whether 'the District should have anticipated, as a consequence of receiving the police reports, that a complaint by [plaintiff] would be forthcoming.'"  *Mazloum*, 522 F. Supp. 2d at 49.  Further, the content requirements for giving notice to the District "are to be interpreted liberally, and in close cases [courts are to] resolve doubts in favor of finding compliance with the statute."  *Id.*; *Shaw v. District of Columbia*, 2006 WL 1274765, at *6 (D.D.C. May 8, 2006).

Filing a complaint report with the MPD results in its completing a complaint summary sheet, a

writing that is created by the MPD during the regular course of business.[2]  *Mazloum*, 522 F. Supp. 2d at 50; *Shaw*, 2006 WL 1274765, at *12.  In addition, the complaints would have allowed the MPD to conduct an early investigation of the facts surrounding such claims, and would have given it warning that litigation would be likely, particularly because there were three separate complaints filed in succession.  *Mazloum*, 522 F. Supp. 2d at 51 (stating that a police complaint, on its face, put the District on notice of a potential assault and battery claim after the plaintiff had allegedly been beaten by police officers); *Jones v. Ritter*, 587 F. Supp. 2d 152, 158–59 (D.D.C. 2008).  Thus, because the complaints filed in May and June of 2009 fell within six months of the harassment that occurred between April and August of 2009, the plaintiff's claims that arise from the latter time period satisfy the statutory notice requirement.

The defendants also contend that while the claims that arise from the May 26, 2010 acquittal are timely because the July 26, 2010 letter was sent less than six months later, these claims are nonetheless barred because they do not provide notice of the approximate time, place, cause, and circumstances of the injury.  Defs.' Mot. at 12.  The letter describes the cause and circumstances of the injury by stating that Officer Dohare said that he would become the plaintiff's worst enemy, harassed him by illegally issuing him parking and traffic citations for violations that he had not committed, and maliciously arrested and prosecuted him.  *Id.*, Ex. 2, at 2.  Further, the letter indicates that the plaintiff filed complaints against Officer Dohare between May and September of 2009 for the ongoing harassment.  *Id.*  Though the letter does not expressly state that he was repeatedly stopped or issued citations within the District, that such activities were purportedly carried out by MPD officers provides

---

[2]  The court has come to understand from these cases that it is standard practice for the MPD to create a complaint summary sheet when a citizen complaint is filed.  Although the parties in those cases provided such documents to the court, and the parties in the instant case have not, the court will infer at this stage that the MPD did indeed create complaint summary sheets for the plaintiff's respective complaints.  If the District later argues that no such summary sheets were generated for the plaintiff's complaints, the court will entertain that argument at that juncture.

this approximate location. Because, as noted earlier, the content requirements for giving notice to the District are to be interpreted liberally, "including the approximate time of the injury," it appears that the plaintiff's letter provided adequate approximate information to give the District early warning that litigation would likely occur in the future. *Mazloum*, 522 F. Supp. 2d at 49. The plaintiff's claims that arise from the May 26, 2010 acquittal are therefore not barred by the notice requirement.

### D. Section 1983 Claims

#### 1. Legal Standard

Citizens may bring claims under Section 1983 in order to enforce their federal statutory or constitutional rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002). To state a Section 1983 claim against an individual, a plaintiff must allege that the individual acted under color of state law, and that he or she deprived the plaintiff of a federal statutory or constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

To determine whether a municipality, such as the District, is liable for its employees' acts under 42 U.S.C. § 1983, the court must first evaluate whether the plaintiff has sufficiently alleged a predicate constitutional violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). *Id*. If so, the court should then determine whether the violation was caused by a custom or policy of the municipality. *Id*.; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, (1978).

There are a number of ways in which a municipality can have a "policy" that creates liability under Section 1983. These include "the explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom'; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the

need will result in constitutional violations." *Baker*, 236 F.3d at 1306–07 (internal citations omitted). "Deliberate indifference" is determined by analyzing whether, from an objective standpoint, the municipality knew or should have known of the risk of constitutional violations. *Farmer v. Brennan*, 511 U.S. 825, 841 (1994).

### 2. Section 1983 Claims as to the Defendant Officers

The defendants contend that the plaintiff fails to sufficiently allege constitutional violations for some of his Section 1983 claims against the defendant officers. Defs.' Mot. at 7. Specifically, the defendants assert that the five traffic tickets that were issued to the plaintiff do not implicate the Fourth Amendment.[3] *Id.*

As described earlier, in order to sufficiently state a Section 1983 claim against the defendant officers, the plaintiff must indicate that they acted under color of state law, and that the plaintiff was deprived of a federal right. *Gomez*, 446 U.S. at 640. With respect to the first requirement, the defendants do not dispute that they acted under color of state law when issuing traffic citations to the plaintiff. *See Bacon v. Patera*, 772 F.2d 259, 263 (6th Cir. 1985) (determining that the defendant police officer was acting under color of state law when he issued citations to the plaintiff).

The court next turns to whether the plaintiff has sufficiently alleged a constitutional violation. The Fourth Amendment guarantees an individual's right to be free from unlawful search and seizure. *Herring v. United States*, 555 U.S. 135, 136 (2009). A police officer may stop and briefly detain a moving vehicle for investigatory purposes if the officer has a reasonable suspicion, grounded in specific and articulable facts, that the occupant is involved in criminal activity. *United States v.*

---

[3] The defendants do not dispute whether the plaintiff adequately alleges constitutional violations as to the August 2009 arrest and subsequent trial. Accordingly, the defendants concede that the plaintiff has sufficiently stated a Section 1983 claim as to the August 2009 arrest and later prosecution.

*Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *United States v. Montgomery*, 561 F.2d 875, 878 (D.C. Cir. 1977).  If the officer lacks a reasonable suspicion for stopping an individual, the stop is considered an unreasonable seizure under the Fourth Amendment. *United States v. Abdus-Price*, 518 F.3d 926, 929–30 (D.C. Cir. 2008); *United States v. Board*, 744 F. Supp. 6, 8 (D.D.C. 1990).

In this case, the plaintiff claims that he received three "bogus" traffic tickets: one for failure to give a turn signal, one for making a U-turn in an area where such turns are purportedly allowed, and one for having an obstructed rear tag.  Am. Compl. ¶¶ 13–21, 27–30.  Although the plaintiff does not expressly state that he was stopped by the police before receiving these tickets, the court will infer that they did indeed stop him before issuing the tickets.  *See Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 284 (D.C. Cir. 2009) (stating that at the motion to dismiss stage, all reasonable inferences must be drawn in the plaintiff's favor).  Accordingly, accepting as true the plaintiff's allegations that the defendant officers issued the tickets as part of a harassment campaign, and that they thus lacked reasonable suspicion of criminal activity before stopping him, the court holds that the plaintiff has sufficiently alleged a Fourth Amendment violation as to these three traffic tickets.  *See Montgomery*, 561 F.2d at 878-80 (determining that the plaintiff had adequately stated a claim for a Fourth Amendment violation when sufficiently pleading that that there was no reasonable suspicion for his traffic stop).

The defendants further assert that even if the plaintiff can make out a constitutional claim, they are entitled to qualified immunity.  Defs.' Mot. at 8.  The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing that the official violated a statutory or constitutional right, and that the right was clearly established at the time of the challenged conduct.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The defendant officers are not entitled to qualified immunity here, as the defendant officers stopped the plaintiff for traffic

violations without reasonable suspicion that such violations had actually occurred, and because the "right to be free from detention except on reasonable suspicion or probable cause was clearly established" at the time.  *Polk v. District of Columbia*, 121 F. Supp. 2d 56, 64 (D.D.C. 2000) ("under clearly established law, police officers cannot stop civilians without reasonable suspicion") (internal quotations marks and citation omitted); *Saddler v. D'Ambrosio*, 759 F. Supp. 4, 8 (D.D.C. 1990) (determining that the defendant officer was not entitled to qualified immunity because the plaintiff had sufficiently pleaded a Fourth Amendment violation); *Lange v. City of Grand Junction*, 2009 WL 1362636, at *5 (D. Col. May 14, 2009) (holding that qualified immunity did not apply to the plaintiff's Fourth Amendment claim, where the defendant officers had engaged in a series of harassing activities against the plaintiff, including subjecting him to unwarranted traffic stops); *Lange v. City of Grand Junction*, 2009 WL 973502 (D. Col. Apr. 10, 2009); *Lee v. City of S. Charleston*, 2009 WL 2602378, at *8 (S.D.W.Va. Aug. 21, 2009) (determining that the defendant officer was not entitled to qualified immunity because the plaintiff had adequately alleged a Fourth Amendment violation for an unreasonable traffic stop).  The court thus denies the defendants' motion to dismiss the plaintiff's Section 1983 claims as to the three aforementioned traffic tickets.

The plaintiff claims that he was issued two additional tickets by the defendant officers: one ticket for excessive idling, and another for parking illegally in a bus zone.  Am. Compl. ¶¶ 14, 16. Unlike the other citations, however, the plaintiff asserts that he never received these tickets.  *Id.*  The court thus could not reasonably infer that the plaintiff was stopped by the defendant officers before being issued these tickets, as he alleges not only that he never received them, but also that he only learned of them after they had doubled.  Because the plaintiff does not adequately plead that he was stopped before being issued these tickets, he fails to sufficiently allege that his Fourth Amendment rights against unlawful seizure were violated.  The plaintiff's Section 1983 claims of a Fourth

Amendment violation for these two tickets are therefore dismissed.[4]

### 3. Section 1983 Claims as to the District of Columbia

According to the defendants, the plaintiff's Section 1983 claims against the District should be dismissed because one police officer's actions are insufficient to constitute a policy. Defs.' Mot. at 9. They further contend that the plaintiff fails to show that a custom or policy caused the constitutional violation. *Id.*

As indicated previously, to make out a Section 1983 claim against a municipality, the plaintiff must allege that the constitutional violation was caused by a custom or policy of the municipality. *Baker*, 326 F.3d at 1306. A constitutional deprivation can be caused by a policy if the municipality failed to act in such a manner that it showed deliberate indifference to the risk that constitutional violations would occur. *Brown v. District of Columbia*, 514 F.3d 1279, 1284 (D.C. Cir. 2008); *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011). Deliberate indifference is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations. *Baker*, 236 F.3d at 13060–07. Faced with such "actual or constructive knowledge" that its agents would probably violate constitutional rights, the municipality should not have adopted a policy of inaction. *Warren,* 353 F.3d at 39.

Here, the plaintiff was issued three traffic tickets over the span of eighteen days, all of which were dismissed. Am. Compl. ¶¶ 14–21. According to the plaintiff, he reported the harassment to an MPD supervisor in May of 2009, to the Office of Police Complaints in early June of 2009, and to another MPD supervisor later that month. *Id.* ¶¶ 22–24. In addition, the plaintiff stated at two hearings

---

[4]     Neither party addresses the Fifth Amendment claim in the briefings. The court cannot decipher a viable Fifth Amendment claim from the plaintiff's Amended Complaint. Therefore, the court *sua sponte* dismisses the plaintiff's Fifth Amendment claim because he fails to allege sufficient facts to state a claim to relief that is plausible on its face, as required by *Iqbal*, 556 U.S. at 678. If the plaintiff desires to better articulate a Fifth Amendment claim, the court will entertain a motion to amend the complaint.

for the traffic citations that he had been issued such tickets as part of a harassment campaign. *Id.* ¶¶ 18, 30.  Accepting as true the plaintiff's allegations, after the plaintiff expressly reported the harassment on five separate occasions, the District would have been aware of the risk of constitutional violations.  Yet nothing was done to stop, discipline, or investigate the defendant officers. *Id.* ¶¶ 19, 22, 23, 25.

It thus appears that the plaintiff has pleaded sufficient facts to indicate that the District was or should have been aware of the risk of constitutional violations from the defendant officers' actions, and that it engaged in deliberate indifference by failing to take any ostensible action in response. *See Muhammad v. District of Columbia*, 584 F. Supp. 2d 134, 139 (D.D.C. 2008) (denying the District's motion to dismiss after determining that it could be "subject to liability under Section 1983 for failing to respond to a known risk of constitutional violations" when not taking action against a police officer who had been the subject of prior complaints); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002); *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 546 (2d Cir. 2009) (holding that the plaintiff did not sufficiently make out a Section 1983 deliberate indifference claim against the sheriff's department because after the plaintiff had filed a complaint against a harassing deputy, the department made an immediate investigation and subsequently prosecuted and fired the deputy).  The defendants' motion to dismiss the Section 1983 claims as to the District is therefore denied.

### E.  Punitive Damages

#### 1.  Section 1983

The defendants assert that punitive damages cannot be awarded against the District for the plaintiff's Section 1983 claims.  Defs.' Mot. at 14.  Generally, a municipality is immune from punitive damages under Section 1983, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), although "[i]t is perhaps possible to imagine an extreme situation where the taxpayers are directly

responsible for perpetrating an outrageous abuse of constitutional rights," *id.* at 267 n.29.  Because the plaintiff alleges no facts indicating that taxpayers were responsible for the abuse that he purportedly suffered, his Section 1983 claims for punitive damages against the District are dismissed.  *E. Trans–Waste of Md., Inc. v. District of Columbia*, 2006 WL 167665, at *5 (D.D.C. Jan. 23, 2006) (dismissing the plaintiff's claim for punitive damages against the District because the plaintiff failed to plead any facts suggesting that the District's taxpayers were responsible for the constitutional violations that it had allegedly endured).

## 2.  Common-Law Claims

The defendants also contend that the plaintiff has not alleged enough facts to support an award of punitive damages for his common-law claims against the District of Columbia.  Defs.' Mot. at 14.  Under District of Columbia law, "punitive damages are properly awarded where the act of the defendant is accompanied by fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury."  *Mitchell v. DCX, Inc.,* 274 F. Supp. 2d 33, 52 (D.D.C. 2003) (citation and internal quotation marks omitted).  "[W]hether punitive damages will lie depends on the intent with which the wrong was done, and not on the extent of the actual damages."  *Morgan v. Barry*, 2000 WL 1946568, at *4 (D.D.C. Dec. 14, 2000) (citation and quotation marks omitted).  Proof of the elements may be inferred from the acts of the defendant and from circumstantial evidence.  *Id.*; *see also Wash. Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990) ("Because direct proof will rarely be available, the finder of fact may infer the requisite mental state from all facts and circumstances surrounding the case.").

Here, the plaintiff alleges that he was the target of an extensive intimidation and harassment campaign, that he was issued traffic citations on multiple occasions, and that he was required to take time off of work to attend hearings for two of them.  Am. Compl. ¶¶ 15, 17.  In addition, he claims that

16

he was arrested and charged with several crimes, including a felony, and had to endure the extreme emotional and mental distress of enduring through a trial and facing the possibility of deportation.  *Id.* ¶¶ 21–24.  The plaintiff also indicates that despite five separate attempts to bring his harassment to light to the proper authorities, his complaints fell on deaf ears and the abuse of power was allowed to continue.  *Id.* ¶¶ 27, 29–30.  Indeed, according to the plaintiff's allegations, not only did the District ignore the plaintiff's pleas for help, but it vigorously prosecuted him for the false charges levied by the defendant officers.  *Id.* ¶ 35. It thus appears that the plaintiff has alleged enough facts to plausibly show that the District engaged in a "willful disregard of [his] rights."  *Mitchell*, 274 F. Supp. 2d at 52. The motion to dismiss the plaintiff's claim for punitive damages against the District for his common-law claims is accordingly denied.


## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendants' motion to dismiss or, in the alternative, for partial summary judgment.  An order consistent with this Memorandum Opinion is issued this 7th day of August, 2012.


RUDOLPH CONTRERAS
United States District Judge

17