# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAHINDER SINGH                                         :
                                                       :
     Plaintiff,                :          Civil Action No.:          10-1615 (RC)
                                                       :
     v.                        :          Re Document Nos.:          31, 36
                                                       :
DISTRICT OF COLUMBIA *et al.*,                         :
                                                       :
     Defendants.               :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DISMISSING UNNAMED JOHN AND JANE DOE OFFICERS AS DEFENDANTS; GRANTING PLAINTIFF'S MOTION TO AMEND THE STATEMENT OF MATERIAL FACTS IN DISPUTE

## I. INTRODUCTION

Plaintiff Mahinder Singh brings suit against District of Columbia Metropolitan Police Department ("MPD") Officer Raj Dohare, unnamed other MPD officers (the "John and Jane Doe Officers"), and the District of Columbia (the "District"), asserting individual and municipal liability claims under 42 U.S.C. § 1983 for violations of his Fourth Amendment right to be free from unreasonable seizures, as well as claims for the common law torts of malicious prosecution, intentional infliction of emotional distress ("IIED"), and abuse of process. Before the Court is the District's motion for partial summary judgment seeking the following relief: dismissal and/or summary judgment in favor of the John and Jane Doe Officers on all counts; summary judgment on the torts of malicious prosecution, IIED, and abuse of process as to the District's vicarious

liability for the alleged conduct of the John and Jane Doe Officers; and summary judgment as to the District's municipal liability under Section 1983.[1]

For the reasons discussed below, the Court will grant the District summary judgment regarding its vicarious liability for the IIED tort allegedly committed by all John and Jane Doe Officers and the abuse of process tort allegedly committed by all John and Jane Doe Officers except for Officer Myisha McConaghey. The Court will deny the District summary judgment as to its vicarious liability for the abuse of process tort allegedly committed by Officer McConaghey. Finally, the Court will deny the District summary judgment as to its municipal liability under Section 1983 on the theory of "deliberate indifference," but the Court will grant the District summary judgment under Section 1983 on the theory of "custom or practice."

## II. BACKGROUND

Singh is a Washington, DC taxicab driver of Indian descent. *See* Pl.'s Mot. Amend. State. Mat. Facts in Dispute ("Pl.'s Mot. Amend."), ECF No. 36-1, at ¶ 2 (Singh Aff.). Sometime in early 2009, Singh was introduced to Raj Dohare, a MPD officer from the same region in northern India as Singh. *Id*. ¶¶ 1-2. Singh's apartment was located within Officer Dohare's patrol service area and near the police station, and Singh and the officer quickly became friends. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-3, Ex. 1 at 8 (Singh Dep.); ECF No. 31-4, Ex. 2 at 11-12 (Dohare Dep.). During this time, Officer Dohare often stopped by Singh's apartment to socialize, sometimes during work hours; the officer also visited the apartment when Singh was not home to eat meals or watch television because he was given a

---

[1]    After the District moved for summary judgment regarding its vicarious liability for the malicious prosecution by the John and Jane Doe Officers, Singh withdrew that claim. *See* Pl.'s Mot. Amend., ECF No. 36, at 11. Singh also acquiesced to dismissing the John and Jane Doe Officers as named defendants. *See* Pl.'s Mem. Opp'n Mot. Part. Summ. J., ECF No. 34, at 7. Accordingly, the Court need not address these two issues further.

key.  *See* Pl.'s Mot. Amend., ECF No. 36-1, at ¶¶ 4, 7 (Singh Aff.); Def.'s Mot. Part. Summ. J., ECF No. 31-3, Ex. 1 at 7-8 (Singh Dep.).  Officer Dohare was joined at times by other MPD officers when he visited Singh's apartment.  *See* Pl.'s Mot. Amend., ECF No. 36-1, at ¶ 4 (Singh Aff.).  Singh also visited Officer Dohare's house in Virginia on a few occasions.  *See id.* ¶ 6.

The relationship between Singh and Officer Dohare quickly soured.  In March 2009, Officer Dohare and another officer were at Singh's apartment when Singh used mild profanity during a conversation.  *See id.* ¶ 10.  Singh's use of profanity in front of the officers angered Officer Dohare.  *See id.*  What came next was a flurry of traffic stops and tickets issued to Singh in the ensuing months by Officer Dohare and another MPD officer, Officer Myisha McConaghey.  Every ticket Singh received from these officers during this period of time ultimately was dismissed on appeal.

The first traffic citation at issue occurred on April 2, 2009, when Singh was issued a Notice of Infraction ("NOI") for excessive idling by an officer who is not identified in the record.  *See* Def.'s Mot. Part. Summ. J., ECF No. 31-5, Ex. 3 (NOI 585116140 and Hearing Record).  A hearing examiner for the District of Columbia Department of Motor Vehicles ("DMV") Adjudication Services dismissed the ticket on May 24, 2009, when the unnamed officer failed to submit a copy of the ticket to the DMV within the time required by law.  *See id.*  Ten days later, on April 12, Singh was issued a citation by Officer Dohare for illegal parking in a bus zone.  *See* Def.'s Mot. Part. Summ. J., ECF No. 31-6, Ex. 4 (NOI 585090122 and Hearing Record).  A DMV hearing examiner dismissed this ticket on May 26, 2009, crediting Singh's claims that he never received the citation and that Officer Dohare was retaliating against him by issuing "bogus tickets."  *Id.*

Next, on April 20, 2009, Singh was pulled over and issued a traffic ticket by Officer

Dohare for failure to signal. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-7, Ex. 6 (NOI

583976444 and Hearing Record). Once again, a DMV hearing examiner dismissed the citation.

*See id*. Singh reiterated his claim at the hearing that Officer Dohare was harassing him. *See id*.

Also during this traffic stop, Officer Dohare requested assistance to administer a field sobriety

test to Singh at the scene, which Singh easily passed. *See* ECF No. 32, Ex. 5 (OPC Complaint

No. 09-0316).

On July 19, 2009, Singh was stopped by Officer McConaghey and issued traffic tickets

for obstructed tags and an improper turn. *See* Def.'s Mot. Part. Summ. J., ECF No. 8, Ex. 7

(NOI 583961254, NOI 583961243, and Hearing Record). As with previous citations, a DMV

hearing examiner dismissed these tickets on appeal when the officer failed to appear. *See id*.

Finally, the last traffic stop in which Singh was driving occurred on August 1, 2009. During this

stop, Singh was issued tickets by Officer McConaghey for obstructed tags, parking abreast (*i.e.*,

double parking), and parking in a no parking zone. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-

9, Ex. 8 (NOI 581471645, NOI 581471656, and NOI 584839485, and Hearing Record). A DMV

hearing examiner dismissed all three tickets on October 30, 2009. *See id*. At that hearing, Singh

again asserted that he was being harassed by MPD officers. *See id*.

The interactions between Officer Dohare, Officer McConaghey, and Singh did not end

with the August 1 traffic stop. Instead, the final event at issue occurred on August 4, 2009, just

three days after the previous stop. On this date, Officer McConaghey initiated a traffic stop of a

car in which Singh was the passenger. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-4, Ex. 2 at

10 (Dohare Dep.). Officer McConaghey radioed for backup, and Officer Dohare quickly

responded to the scene because he only was a couple blocks away and the stop occurred within

his patrol service area. *See id.* Once he arrived at the location of the stop, Officer Dohare ordered Singh to leave the area immediately; when Singh refused, Officer Dohare placed Singh under arrest. *See id.* at 15-16. The exact details of what transpired before, during, and after the arrest remain in dispute, but Singh eventually was charged with assaulting a police officer, disorderly conduct, threats to do bodily harm, and failure to obey a lawful order of the police. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-12, Ex. 11 at 3 (*United States v. Singh*, D.C. Sup. Ct., 2009-CMD-16916, trial tr., Vol. III, May 26, 2010 ("*Singh*, trial tr., Vol. III")); *see also* ECF No. 31-10, Ex. 9 (Incident Report 09110502).

During the course of the traffic stops, dismissed tickets, and August 4 arrest, Singh submitted multiple complaints about Officer Dohare's alleged harassment, as well as about similar wrongful conduct by Officer McConaghey. On June 8, 2009, Singh filed a complaint with Officer Dohare's district supervisor regarding the April 20 traffic stop. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-13, Ex. 12 (Incident Summary Sheet, No. 09003727). In the complaint, Singh stated that Officer Dohare was harassing him by issuing meritless traffic citations. *See id.* Singh also filed a formal report with the District of Columbia Office of Police Complaints ("OPC") on June 9, 2009, complaining again that Officer Dohare made the April 20 traffic stop without cause and for the sole purpose of harassing him, rather than any legitimate law enforcement purpose. *See* ECF No. 32, Ex. 5 (OPC Complaint No. 09-0316). Following an investigation into this complaint, the OPC sustained Singh's allegations of harassment in a merits decision dated September 24, 2012. *See id.* The MPD then initiated an adverse employment action against Officer Dohare, and the officer received a penalty of one day suspended without pay, one day of leave forfeited, and one day held. *See* ECF No. 32-1, Ex. 13 (Commander's Resolution Conference Worksheet).

Singh later filed another report with the OPC about Officer Dohare, this time complaining that the officer unlawfully arrested him during the events on August 4, 2009. *See* ECF No. 32-2, Ex. 14 (OPC Complaint No. 09-0454, Findings of Fact and Merits Determination). The OPC sustained this complaint on August 7, 2013, stating on the record that Officer Dohare harassed Singh through his conduct surrounding the arrest. *See id.* at 8. In his affidavit, Singh asserts that he made several other complaints about Officer Dohare and Officer McConaghey. *See* Pl.'s Mot. Amend., ECF No. 36-1, at 8 (Singh Aff.). Specifically, Singh filed a report regarding Officer Dohare with the district supervisor on May 21, 2009. *See id.* Singh also submitted three additional complaints regarding the officers to the OPC between July 20 and August 1, 2009. *See id.* Singh states in his affidavit that a report was taken for each complaint, *see id.*, but he did not include copies of the reports in the summary judgment record or provide further details in his affidavit about what, if anything, happened next with these complaints.

In May 2010, Singh's criminal trial was held at the Superior Court for the District of Columbia regarding his arrest on August 4, 2009. Officer Dohare, Officer McConaghey, and Singh, as well as other witnesses, testified at the trial. *See generally* Def.'s Mot. Part. Summ. J., ECF No. 31-12, Ex. 11 (*Singh*, trial tr., Vol. III). According to Officer Dohare's testimony about the events on August 4, Singh reacted to his imminent arrest by spitting on the officer and threatening the officer and his family, although other witnesses at trial contradicted the officer's testimony. *See id.* at 7, 16. Following the close of the government's case, Singh moved for judgment of acquittal on the threats to do bodily harm, disorderly conduct, and failure to obey charges; Singh's counsel did not move for judgment of acquittal on the assaulting a police officer charge because he thought it likely would be denied. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-11, Ex. 10 at 3, 9 (*United States v. Singh*, D.C. Sup. Ct., 2009-CMD-16916, trial tr., Vol. II,

May 25, 2010 ("*Singh*, trial tr., Vol. II")).  The trial court granted Singh's motion as to the disorderly conduct and failure to obey charges, and denied the motion as to the threatening charge.  *See id.* at 9.  At the end of the trial, the court acquitted Singh on the remaining charges of threats to do bodily harm and assaulting a police officer.  *See* Def.'s Mot. Part. Summ. J., ECF No. 31-12, Ex. 11 at 17 (*Singh*, trial tr., Vol. III).  The judge specifically noted when entering judgment that he did not find that the government proved the spitting incident beyond a reasonable doubt due to credibility issues with the witnesses, including Officer Dohare.  *See id.*

Following his acquittal on the criminal charges, Singh filed the instant civil lawsuit against Officer Dohare, the John and Jane Doe Officers, and the District asserting individual and municipal liability claims for Fourth Amendment violations pursuant to Section 1983, as well as several common law tort claims.  *See generally* Corr. Amend. Compl., ECF No. 13.  On August 7, 2012, this Court granted in part and denied in part defendants' motion to dismiss for failure to state a claim or, alternatively, for partial summary judgment.  *See generally* Mem. Op., ECF No. 17.  In particular, the Court dismissed Singh's Section 1983 claims in regard to the traffic tickets issued on April 9 and April 12, 2009, because Singh did not assert sufficient facts showing that he was seized before receiving the tickets, thereby not implicating the Fourth Amendment.  *See id.* at 13-14.  The Court, however, refused to dismiss the Section 1983 claims as to the three other traffic stops and rejected defendants' argument that the MPD officers are entitled to qualified immunity.  *See id.* at 12-13.  Finally, the Court refused to dismiss the Section 1983 municipal liability claim against the District under the doctrine of deliberate indifference.  *See id.* at 14-15.

Now before the Court is the District's motion for partial summary judgment.[2]  With

Singh having removed the John and Jane Doe Officers as defendants and dropped the vicarious

liability theory premised on the alleged malicious prosecution by the unnamed officers, the

following requests for relief remain from the District's motion: summary judgment on the torts

of IIED and abuse of process as to the District's vicarious liability for the alleged conduct of the

John and Jane Doe Officers; and summary judgment as to the District's liability under Section

1983 on the ground that the District did not have a policy or custom such that municipal liability

attaches or, alternatively, on the ground that Singh fails to establish a predicate constitutional

violation by Officer Dohare.  Singh did not file a cross-motion for summary judgment.[3]  The

Court will address each of the District's arguments below.

### III.  LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and [thus] the movant is entitled to judgment as a matter of law."  Fed. R.

---

[2]      Officer Dohare did not move separately for summary judgment on the claims against him.

[3]      Singh filed an opposition to the District's motion for partial summary judgment. *See generally* Pl.'s Mem. Opp'n Mot. Part. Summ. J., ECF No. 34.  The District then filed a reply brief, in which, among other things, it pointed out that Singh failed to comply with the requirement in Federal Rule of Civil Procedure Rule 56(c)(1)(A) and Local Rule 7(h)(1) of citing to specific facts in the record showing genuine issues for trial.  *See generally* Def.'s Reply Supp. Mot. Part. Summ. J., ECF No. 35.  Singh subsequently filed a motion and memorandum to amend his statement of material facts in dispute.  *See generally* Pl.'s Mot. Amend, ECF No. 36. The District objected to this motion, arguing that the revised statement of facts still was in violation of the federal and local rules, and that the memorandum in support of the motion constituted an improper surreply filed without leave of the Court.  *See generally* Def.'s Opp'n Mot. Amend, ECF No. 38.

In the interest of justice, the Court will grant Singh's motion to file an amended statement of material facts in dispute.  *See generally* Pl.'s Mot. Amend, ECF No. 36.  The Court does not decide whether Singh's memorandum in support of the motion constitutes an improper surreply because it finds none of the arguments raised therein helpful or persuasive in resolving the District's motion.

Civ. P. 56(a); *accord. Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). "A fact is material

if it 'might affect the outcome of the suit under the governing law,' and a dispute about a

material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When Rule 56 is invoked, the moving party

has the initial burden of demonstrating the absence of a genuine dispute as to any material fact.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear

the burden of persuasion at trial, its burden "may be discharged by 'showing' — that is, pointing

out to the district court — that there is an absence of evidence to support the nonmoving party's

case." *Id*. at 325.

Once the moving party has met its burden, to defeat the motion the nonmoving party

must designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324 (citation

omitted). Although the Court must view this evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences in that party's favor, *see Grosdidier v.

Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23-24 (D.C. Cir. 2013), the nonmoving party

must show more than "[t]he mere existence of a scintilla of evidence in support of" his position

— "there must be evidence on which the jury could reasonably find for [the nonmoving party]."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Moreover, the nonmoving party

"may not rest upon mere allegation or denials of his pleading but must present affirmative

evidence showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241

(D.C. Cir. 1987) (internal quotation marks and citation omitted).

The Court further notes that "[c]redibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at

summary judgment." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (citation omitted). Indeed, a court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial." *Id.* (citation omitted).

## IV. VICARIOUS LIABILITY AND TORT CLAIMS

The District moves for summary judgment as to its vicarious liability for the torts of IIED and abuse of process allegedly committed by the John and Jane Doe Officers. *See* Def.'s Mem. Supp. Mot. Part. Summ. J., ECF No. 31, at 13. As an initial matter, the Court notes that is unclear whether Singh actually pleads a claim of vicarious liability against the District for these torts. For the IIED (Count IV) and abuse of process (Count V) claims in the corrected amended complaint, Singh specifically alleges only that these torts were committed by Officer Dohare and the unnamed officers. *See* Corr. Amend. Compl., ECF No. 13, at ¶¶ 68-74. Nowhere in Count IV or Count V does Singh assert that the District is vicariously liable for the torts, and the Court hesitates to read a theory of liability into the complaint when it appears not to exist, particularly when the now-dismissed malicious prosecution count (Count III) demonstrates that Singh knew how to plead a vicarious liability claim when he wanted to do so. *Cf. Harris v. Wackenhut Servs., Inc.*, 648 F. Supp. 2d 53, 60 (D.D.C. 2009) ("Where … the plaintiff has demonstrated knowledge of how to plead a proper theory of discrimination, but appears to have deliberately pled that claim such that he excludes by omission other theories, his complaint should not be read as having pled the omitted theories."). Nonetheless, the District fails to make this argument in its motion, so the Court will treat the vicarious liability claims as properly pleaded and continue the analysis.

## A. *Respondeat Superior*

Under the doctrine of *respondeat superior*, the District is vicariously liable for torts committed by its police officers while acting within the scope of their employment.  *See Armbruster v. Frost*, 962 F. Supp. 2d 105, 116 (D.D.C. 2013) (citation and quotation omitted); *see also Sheppard v. United States*, 640 F. Supp. 2d 29, 34 (D.D.C. 2009) ("There are two requirements to establish *respondeat superior* liability: (1) the existence of an employer-employee relationship, and (2) the tortious conduct occurs while the employee is acting within the scope of his employment.").  The District argues that summary judgment is appropriate on the ground that Singh fails to provide evidence creating a genuine dispute of material fact as to whether any unnamed officer committed the underlying tortious conduct, and as such, the District is not liable through the *respondeat superior* doctrine.

## B. Intentional Infliction Of Emotional Distress

To survive summary judgment on his IIED claim, Singh must demonstrate that there exists a genuine issue of material fact regarding each challenged element of the tort.  *See Ross v. DynCorp*, 362 F. Supp. 2d 344, 358 (D.D.C. 2005).  Singh therefore is required to provide evidence demonstrating (1) extreme and outrageous conduct on the part of the unnamed officers that (2) intentionally or recklessly (3) caused him severe emotional distress.  *See Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C. Cir. 1990) (citing *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. App. 1982)).

As to the first element, which is the only element the District challenges in its motion, the alleged conduct must be "'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Hinton v. Rudasill*, 624 F. Supp. 2d 48, 52 (D.D.C. 2009) (quoting *Kotsch v. Dist. of Columbia*, 924 A.2d

1040, 1046 (D.C. 2007)).  As such, liability for the IIED tort "does not extend to mere insults,

indignities, threats, annoyances, petty oppressions, or other trivialities."  *Hollis v. Rosa Mexicano*

*DC, LLC*, 582 F. Supp. 2d 22, 26 (D.D.C. 2008) (citation and quotation omitted).  In the District,

"[t]he bar for pleading this tort … has been set very high."  *Id.*  For example, the District of

Columbia Court of Appeals, when explaining its reluctance to find certain conduct sufficiently

extreme and outrageous to support an IIED claim, has stated that the "'rough edges of our

society are still in need of a good deal of filing down, and in the meantime plaintiffs must

necessarily be expected and required to be hardened to a certain amount of rough language, and

to occasional acts that are definitely inconsiderate and unkind.'"  *King v. Kidd*, 640 A.2d 656,

668 (D.C. 1993) (quoting Restatement (Second) of Torts § 46 cmt. d).

The District argues that the Court should grant summary judgment because Singh "cannot

establish that the conduct of an officer who issued NOIs on July 19, 2009 and August 1, 2009

was so outrageous that it exceeded all possible bounds of decency[.]"  Def.'s Mem. Supp. Mot.

Part. Summ. J., ECF No. 31, at 14 (internal quotations omitted).  It is undisputed that based on

her badge number, the officer who issued those tickets is Officer McConaghey.  *See* Def.'s Mot.

Part. Summ. J., ECF No. 31-8, Ex. 7 (NOI 583961254, NOI 583961243, and Hearing Record);

ECF No. 31-9, Ex. 8 (NOI 581471645, NOI 581471656, and NOI 584839485, and Hearing

Record); Pl.'s Mot. Amend., ECF No. 36-1, at ¶ 17 (Singh Aff.).  In his opposition

memorandum, Singh fails to address directly the District's argument regarding the IIED liability

of any officer besides Officer Dohare.  *See generally* Pl.'s Mem. Opp'n Mot. Part. Summ. J.,

ECF No. 34.  The closest Singh comes is when he states, without providing references to specific

facts in the record, that Officer McConaghey was "involved in the harassment of plaintiff" and

should be treated akin to "an unindicted co-conspirator in a criminal case."  *Id.* at 8.  Singh also

asserts that Officer McConaghey issued "bogus" tickets, but he cites to no evidence in the record and makes no argument as to why these actions alone are sufficient to create a triable issue of fact on the IIED claim. *See id.* The rule in this circuit is clear that when a plaintiff fails to respond to an issue raised in a dispositive motion, the Court may treat that argument as conceded. *See Iweala v. Operational Techs. Servs., Inc.*, 634 F. Supp. 2d 73, 80-81 (D.D.C. 2009) (treating as conceded defendants' summary judgment arguments where plaintiff failed to respond in her opposition). The Court therefore is entitled to dismiss Singh's IIED claim as to the John and Jane Doe Officers.

Nonetheless, Singh also loses on the merits, so the Court need not grant summary judgment on this count for procedural reasons. Singh states in his affidavit that Officer McConaghey was "always with Officer Dohare when he harassed me." *See* Pl.'s Mot. Amend., ECF No. 36-1, at ¶ 17 (Singh Aff.). Singh also asserts in the affidavit that Officer McConaghey was "in league with Officer Dohare" by issuing "bogus" traffic tickets. *Id.* ¶ 17. Both assertions, however, are so conclusory and lacking in the necessary factual specificity that they serve no evidentiary value and therefore are not suitable for deciding summary judgment. *See Akers v. Beal Bank*, 845 F. Supp. 2d 238, 243-44 (D.D.C. 2012) (explaining that "the nonmoving party … may not rely solely on allegations or conclusory statements. Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor" (internal citation and quotation omitted)); *see also Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (explaining that "some statements are so conclusory as to come within an exception to [the] rule" that a court must accept all statements by the nonmoving party as true for purposes of summary judgment); *Lindsey v. Rice*, 524 F. Supp. 2d 55, 60 (D.D.C. 2007) (granting summary judgment

when plaintiff's "self-serving statements [were] too conclusory to survive [defendant's] summary judgment motion").

The few remaining details in the record about Officer McConaghey's conduct do not create a genuine issue of material fact requiring a jury on the IIED claim. In his affidavit, Singh states that on July 19, 2009, Officer Dohare told Officer McConaghey "that's him" in regard to Singh before Officer McConaghey issued plaintiff two tickets at a traffic stop later that same night, both of which were dismissed. *See* Pl.'s Mot. Amend., ECF No. 36-1, at ¶¶ 17-18 (Singh Aff.); Def.'s Mot. Part. Summ. J., ECF No. 31-8, Ex. 7 (NOI 583961254, NOI 583961243, and Hearing Record). Officer McConaghey also issued Singh three more tickets at a traffic stop on August 1, 2009, just a week and a half later, and these tickets too were dismissed on appeal. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-9, Ex. 8 (NOI 581471645, NOI 581471656, and NOI 584839485, and Hearing Record). Just three days after that, Officer McConaghey initiated the traffic stop on August 4 in which Singh was a passenger. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-3, Ex. 2 at 10 (Dohare Dep.).

At that traffic stop, Officer McConaghey radioed for back-up, and Officer Dohare quickly arrived at the scene. *Id.* Following a confrontation with Officer Dohare, Singh was arrested and charged with disorderly conduct, assaulting a police officer (Officer Dohare), threats to do bodily harm (Officer Dohare), and failure to obey a lawful order of the police (Officer Dohare). *See* Def.'s Mot. Part. Summ. J., ECF No. 31-12, Ex. 11 at 3 (*Singh*, trial tr., Vol. III). There is no evidence in the summary judgment record before the Court that Officer McConaghey acted improperly toward Singh during these events; nor is there evidence showing that the initial traffic stop by Officer McConaghey which eventually lead to Singh's arrest was pretextual, unlawful, or unconstitutional.

Although the events involving Officer McConaghey surely were upsetting and inconveniencing to Singh, an IIED claim does not lie with every slight, as the law sets a very high bar through the "extreme and outrageous conduct" standard. *Cf. Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 656 (N.D. Ill. 2011) ("IIED provides no remedy for the slight hurts which are the price of a complex society." (citation and quotation omitted)); *Jones v. Clinton*, 990 F. Supp. 657, 677 (E.D. Ark. 1998) ("The [IIED] tort is clearly not intended to provide legal redress for every slight insult or indignity that one must endure."). The conduct here specifically attributable to Officer McConaghey — two traffic stops with no use of force, no arrest, and no other threatening behavior on her part, as well as a third stop in which, as far as the record at summary judgment shows, the officer did not interact improperly with Singh as the passenger in the car — simply does not come close to constituting the "outrageous" conduct necessary for an IIED tort. *Compare Martin v. City of Philadelphia*, No. CIV. 99-543, 2000 WL 1052150, at *16 (E.D. Pa. July 24, 2000) (granting defendants' motion for summary judgment on the IIED count when "Plaintiff has presented no evidence that [the two police officers] assaulted or struck plaintiff or that their conduct was outrageous"), *and Eres v. Cnty. of Alameda*, No. C-96-2094, 1999 WL 66519, at *12-13 (N.D. Cal. Feb. 1, 1999) (granting defendants' motion for summary judgment on the IIED count when "[t]he undisputed facts are that the officers simply placed [plaintiff] under arrest, handcuffed her and transported her to the Alameda City Jail," because this evidence does not demonstrate that the officers' conduct was "outrageous"), *with Lancaster v. Cox*, No. 10-3064, 2013 WL 1624453, at *8 (C.D. Ill. Apr. 15, 2013) (denying defendants' motion for summary judgment on the IIED count when "a genuine issue of fact exists as to whether [the police officer] used excessive force" when he arrested the plaintiff), *and Brooks v. Dist. of Columbia*, No. CIV A 05-362, 2006 WL 3361521, at *3-4 (D.D.C. Nov. 20,

2006) (denying defendants' motion for summary judgment on the IIED count when plaintiff "presented evidence that [a MPD officer] held him down with his knee in his back, squeezed his neck and choked him [and] … for approximately 20-30 minutes the [other] Officers punched him in the face approximately 10-20 times and kicked him in his body while he was on the ground").

The Court therefore concludes that, viewing the evidence in the light most favorable to Singh, a genuine dispute of material fact does not exist because a jury could not reasonably find that Officer McConaghey's actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002). Further, because Singh fails to provide even a "scintilla of evidence in support of" an IIED claim against any other John and Jane Doe Officer, the Court grants summary judgment as to the District's vicarious liability for those officers as well. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### C. Abuse Of Process

Under District of Columbia law, abuse of process occurs when "'process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do.'" *Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*, 677 F. Supp. 2d 195, 199 (D.D.C. 2010) (quoting *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C. 1980)). There are two basic elements for an abuse of process claim: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Id.* (citing *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959)); *see also Morowitz*, 423 A.2d at 198 ("[I]n addition to ulterior motive, one

must allege and prove that there has been a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge.").

The District argues that the Court should grant summary judgment as to the conduct of the John and Jane Doe Officers because "[t]here is no evidence that the officer who issued the July 19, 2009 and August 1, 2009 NOIs acted spitefully and maliciously toward Singh." Def.'s Mem. Supp. Mot. Part. Summ. J., ECF No. 31, at 14. The District also argues that even if this officer acted with malice, "there is no evidence that the NOIs were issued to compel the Plaintiff to do some collateral thing other than to pay the fine." *Id*. at 14-15. Again, it was Officer McConaghey who issued these tickets to Singh.

In his opposition memorandum, Singh does not address in much detail why the Court should deny summary judgment on this issue, including when or how any unnamed officer committed the abuse of process tort. *See generally* Pl.'s Mem. Opp'n Mot. Part. Summ. J., ECF No. 34. When a party fails to oppose an argument in a dispositive motion, the Court may treat that argument as conceded. *See Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003). Nonetheless, the Court will give Singh the benefit of the doubt and address the merits of the claim.

Officer McConaghey issued Singh five tickets during two otherwise uneventful traffic stops on July 19 and August 1, 2009. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-8, Ex. 7 (NOI 583961254, NOI 583961243, and Hearing Record); ECF No. 31-9, Ex. 8 (NOI 581471645, NOI 581471656, and NOI 584839485, and Hearing Record). Just three days after the August 1 stop, Officer McConaghey initiated the stop where Singh, as the passenger in the car, was charged by Officer Dohare with several crimes of which he was later acquitted. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-4, Ex. 2 at 10 (Dohare Dep.); ECF No. 31-12, Ex. 11 at 3 (*Singh*, trial tr.,

Vol. III). There is no evidence, however, that Officer McConaghey acted unprofessionally, unlawfully, or unconstitutionally toward Singh at any time during this stop, or even that the original stop itself was wrongful.

The other competent evidence possibly suggesting malicious intent by Officer McConaghey comes from Singh's affidavit. The Court already rejected most of Singh's conclusory affirmations about the officer when considering the IIED claim. Most significantly, however, the remaining evidence in the affidavit is the fact that on July 19, 2009, Officer Dohare told Officer McConaghey "that's him" in regard to Singh before Officer McConaghey issued plaintiff two tickets at a traffic stop later that night, both of which were dismissed on appeal. *See* Pl.'s Mot. Amend., ECF No. 36-1, at ¶¶ 17-18 (Singh Aff.); ECF No. 31-8, Ex. 7 (NOI 583961254, NOI 583961243, and Hearing Record).

Accepting as true Singh's separate evidence regarding the acrimonious relationship between Officer Dohare and himself, the Court finds that Officer Dohare's ominous statement on July 19 to Officer McConaghey followed closely by her issuance of two meritless traffic citations to Singh that evening raises a genuine dispute of material fact as to whether Officer McConaghey acted with an "ulterior motive" while executing her law enforcement duties. It follows from this conclusion that a jury also could reasonably find that Officer McConaghey's actions were "a perversion of the judicial process" and sought the "achievement of some end not contemplated in the regular prosecution of the charge" — that is, to harass or intimidate Singh, which clearly contradicts the District's argument that the officer only sought to compel Singh to pay a fine. *Morowitz*, 423 A.2d at 198. The Court therefore concludes that summary judgment is inappropriate as to Officer McConaghey's conduct. But because Singh fails to provide evidence even hinting at abuse of process by any other unnamed officer, the Court grants

summary judgment for the District as to the conduct of the remaining John and Jane Doe Officers.

### D. Civil Conspiracy

The Court next must address an issue that arose during briefing on the District's motion for summary judgment. In his original complaint filed with the Superior Court for the District of Columbia, Singh asserted a claim of civil conspiracy (Count III) against the District, Officer Dohare, and the John and Jane Doe Officers. *See* Compl., ECF No. 1-2, Ex. 1 ¶¶ 43-45. All defendants quickly moved to dismiss this count under the intracorporate conspiracy doctrine on the ground that Singh was alleging a conspiracy between MPD officers within the scope of their employment, or between the MPD and its officers. *See* Defs.' Mot. Dismiss Compl., ECF No. 5, at 11-12. Singh then moved to file an amended complaint; the new complaint, however, kept the civil conspiracy claim because Singh accidently refiled the original complaint. *See generally* Amend. Compl., ECF No. 6. Defendants filed another motion to dismiss that again addressed the civil conspiracy count. *See* Defs.' Mot. Dismiss Amend. Compl., ECF No. 8, at 13. Realizing that he had attached the wrong amended complaint, Singh moved the Court for leave to file a corrected amended complaint. *See* Pl.'s Mot. Leave, ECF No. 10. The Court, in granting Singh's motion, ruled that defendants' prior two motions to dismiss now were moot. *See* Min. Order, Mar. 29, 2011.

When Singh filed the corrected amended complaint, he removed the specific civil conspiracy count for unknown reasons. *See generally* Corr. Amend. Compl., ECF No. 13. In the new complaint, the only direct mention of conspiracy comes within Count IV for IIED when Singh summarily alleges "a conspiracy involving multiple members of the Metropolitan Police Department." *Id.* ¶ 70. When defendants filed their renewed motion to dismiss the corrected

amended complaint, they dropped the civil conspiracy argument, likely in reaction to Singh doing the same. *See generally* Defs.' Mot. Dismiss Corr. Amend. Compl., ECF No. 12. The Court therefore did not address this claim when resolving defendants' motion. *See generally* Mem. Op., ECF No. 17.

Singh now attempts to resurrect this theory of liability. In his opposition to the District's motion for partial summary judgment, Singh specifically asserts that "Officer Dohare is vicariously liable for acts committed by co-conspirators." Pl.'s Mem. Opp'n Mot. Part. Summ. J., ECF No. 34, at 8. Singh cites cases to this effect and argues that "[o]nce a civil conspiracy is found, each coconspirator is responsible for any action in furtherance of the conspiracy performed by other conspirators." *Id*. at 8. Naturally riled by Singh's attempt to reintroduce a civil conspiracy theory into this action, the District responded that the Court should dismiss this claim because discovery is closed, Singh dropped the claim from his corrected amended complaint, and the District already has the instant summary judgment motion pending before the Court. *See* Def.'s Reply Supp. Mot. Part. Summ. J., ECF No. 35, at 3.

The Court agrees with the District. It is "axiomatic" that a party may not amend his complaint through an opposition brief. *See McManus v. Dist. of Columbia.*, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007) ("Plaintiffs have not sought to amend the Amended Complaint, and [i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation and quotation omitted; alteration in original)); *see also Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 28 (D.D.C. 2012) (concluding that "Plaintiffs' primary liability theory is a recent invention, raised for the very first time in opposition to the [] Defendants' Motion to Dismiss," and that theory therefore "must fail"). Singh clearly denied the District an opportunity to move to dismiss the civil conspiracy

theory in its Rule 12(b)(6) motion by omitting the count from the corrected amended complaint, which became the operative document upon filing. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." (citation and quotation omitted)); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1476 (2d ed. 1990) ("A pleading that has been amended … supersedes the pleading it modifies…. Once an amended pleading is interposed, the original pleading no longer performs any function in the case[.]").

Singh cannot now reassert the civil conspiracy theory, which effectively becomes a new claim for relief, after discovery has closed and the District has filed its motion for summary judgment; instead, that theory of liability has been waived. *See Young*, 238 F.3d at 573 ("[I]f an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims."); *Jay v. Fresno Cnty. Jail*, No. 1:10-CV-00072, 2011 WL 841373, at *3 (E.D. Cal. Mar. 4, 2011) ("[A]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." (citation and quotation omitted)). The fact that Singh simply mentions the term "conspiracy" in the corrected amended complaint does not compel a different conclusion. The Court therefore finds that Officer Dohare and the District cannot be held liable for the conduct of other officers through a theory of civil conspiracy.

## V. SECTION 1983 CLAIMS AGAINST THE DISTRICT

Singh seeks to hold the District liable under Section 1983 for constitutional violations allegedly committed by MPD officers. It is well settled that the District of Columbia "is not liable for the unconstitutional conduct of its employees based on *respondeat superior* or vicarious liability." *See Powers-Bunce v. Dist. of Columbia*, 479 F. Supp. 2d 146, 155 (D.D.C. 2007) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 693 (1978)).

Instead, municipal liability under Section 1983 exists only if Singh proves both "a predicate constitutional violation" and "that a custom or policy of the municipality caused the violation." *Robinson v. Dist. of Columbia*, 965 F. Supp. 2d 90, 93-94 (D.D.C. 2013) (citing *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)). "Indeed, the policy or custom must be 'the moving force behind the constitutional violation.'" *Id.* at 94 (quoting *Carter v. Dist. of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986)). "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

The District moves for summary judgment on three grounds: first, that there is no genuine dispute of material fact as to whether Officer Dohare committed a predicate Fourth Amendment violation, *see* Def.'s Mem. Supp. Mot. Part. Summ. J., ECF No. 31, at 16; second, that even if there is evidence of a predicate constitutional violation, municipal liability does not exist because there is no evidence of a policy or custom by the District of making traffic stops without reasonable suspicion or arrests without probable cause, *see id.* at 19; and third, that there is no genuine dispute of material fact that the District was deliberately indifferent to the likelihood of future constitutional violations by its officers, *see id.* at 21-22. The Court addresses each argument below.

### A. Predicate Constitutional Violation

To avoid summary judgment on his Section 1983 claim against the District, Singh first must provide evidence demonstrating a genuine issue of material fact regarding whether a MPD officer committed a predicate constitutional violation. *See Robinson*, 965 F. Supp. 2d at 93-94. Singh alleges in his corrected amended complaint that Officer Dohare and the John and Jane Doe

Officers violated his Fourth Amendment right to be free from unreasonable seizures, which includes traffic stops and arrests.[4] *See* Corr. Amend. Compl., ECF No. 13, at ¶¶ 48-52. This Court previously dismissed Singh's Section 1983 claims premised on the traffic tickets he received on April 2 and April 12, 2009, because the Court could not reasonably infer that Singh was seized before receiving those tickets. *See* Mem. Op., ECF No. 17, at 13. That leaves four separate seizures that could constitute a predicate Fourth Amendment violation: the April 20, 2009, traffic stop; the July 19, 2009, traffic stop; the August 1, 2009, traffic stop; and the August 4, 2009, arrest.

### 1. The Traffic Stops

The police may stop a vehicle if "it was objectively reasonable for the officers who observed [the] vehicle to conclude that a traffic violation had occurred." *United States v. Southerland*, 486 F.3d 1355, 1358 (D.C. Cir. 2007). A police officer, moreover, "may initiate a stop even if the traffic violation is a minor one." *Id*. at 1359. As the Supreme Court has explained, reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "When evaluating the reasonableness of a traffic stop, courts only examine whether the stop was objectively reasonable; subjective intent of the officer plays no role in the analysis." *See United States v. Williams*, 878 F. Supp. 2d 190, 198 (D.D.C. 2012) (citing *Whren v. United States*, 517 U.S. 806, 814 (1996)). Thus, a traffic stop that is supported by objectively

---

[4]     "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). And of course, an arrest is the "quintessential" seizure of a person under the Fourth Amendment. *California v. Hodari D.*, 499 U.S. 621, 624 (1991).

reasonable circumstances is legal even if the stop was "a mere pretext." *See United States v. Mitchell*, 951 F.2d 1291, 1295 (D.C. Cir. 1991).

The District argues that even if Officer Dohare pulled Singh over on April 20 to harass or intimidate him, the officer had an objectively reasonable basis for the seizure. *See* Def.'s Mem. Supp. Mot. Part. Summ. J., ECF No. 31, at 16. In support, the District cites Officer Dohare's deposition in which he describes witnessing Singh run a stop sign and fail to use his signal before making a turn.[5] *See* Def.'s Mot. Part. Summ. J., ECF No. 31-4, Ex. 2 at 14 (Dohare Dep.). Singh, however, has provided conflicting evidence that demonstrates a genuine dispute of fact. For example, the DMV hearing examiner credited Singh's testimony that he gave a proper mechanical signal before making the turn, such that there might not have been an objective basis for the stop. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-7, Ex. 6 (NOI 583976444 and Hearing Record). Similarly, the fact that the examiner dismissed the ticket raises a question as to the propriety of the original stop and calls into question the credibility of the officer's testimony. *See id.* Singh further asserts in his affidavit that Officer Dohare issued him illegal traffic citations, which the DMV examiner's ruling appears to support. *See* Pl.'s Mot. Amend., ECF No. 36-1, at ¶¶ 12-13 (Singh Aff.).

Given the conflicting testimony of Officer Dohare and Singh, the Court only could grant summary judgment by crediting one witness over the other and weighing the evidence, which it is not allowed to do. *See Mobley v. Cont'l Cas. Co.*, 405 F. Supp. 2d 42, 47 (D.D.C. 2005)

---

[5]    Officer Dohare described the basis for the April 20 traffic stop as follows:

The taxicab vehicle that I observed passed a stop sign without stopping and left…. When the vehicle came up to First and P Street intersection, the vehicle did not stop at the stop sign … and then the vehicle turned left, heading westbound on the 100 block of P Street, Southwest…. And then later, that vehicle turned right onto Canal Street, Southwest, the 400 block, and it did not give a turn signal at any of these times.

Def.'s Mot. Part. Summ. J., ECF No. 31-4, Ex. 2 at 14 (Dohare Dep.).

(citation omitted).  Because a genuine issue of fact exists as to whether Officer Dohare had reasonable suspicion for the traffic stop such that it was constitutional, a trial is proper, not summary judgment.

Summary judgment also is inappropriate at this stage for a second reason.  In its memorandum, the District makes no argument and provides no evidence demonstrating that Officer McConaghey's traffic stops of Singh on July 19 and August 1, 2009, were based on reasonable suspicion.  *See generally* Def.'s Mem. Supp. Mot. Part. Summ. J., ECF No. 31. Indeed, the District argues that "[t]he only claims for liability based on underlying conduct that the Court can consider are Officer Dohare's April 20, 2009 ticket to the Plaintiff for failing to signal and his August 4, 2009 arrest of the Plaintiff for misdemeanor assault, making threats and disorderly conduct."  *Id*. at 6-7.  The District's argument demonstrates a clear misreading of the allegations in this action.  Singh plainly alleges in the corrected amended complaint that the John and Jane Doe Officers, namely Officer McConaghey, violated his constitutional rights through unlawful seizures.  *See, e.g.*, Corr. Amend. Compl, ECF No. 13, at ¶ 48 ("defendants Dohare and Doe illegally harassed the plaintiff through the multiple acts of false accusations of infractions of the law and arrest without probable cause."); *id*. ¶ 52 ("As a result of the harassment by the defendants, Mr. Singh has been deprived of his constitutional rights with respect to the Fourth Amendment[.]").  The fact that Singh later dropped the John and Jane Doe Officers as defendants does not mean that the District cannot be liable for their conduct under Section 1983. *Cf. Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002) ("There is … nothing to prevent a plaintiff from foregoing the naming of an individual officer as a defendant and proceeding directly to trial against the municipality.").

At summary judgment the moving party bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Because the District fails to meet that burden by remaining silent on the constitutionality of Officer McConaghey's traffic stops, the Court must decline to grant summary judgment on the issue. The Court therefore concludes that triable issues exist regarding whether a predicate constitutional violation occurred during the April 20, July 19, and August 1, 2009, traffic stops.

## 2. The Arrest

On August 4, 2009, Officer Dohare arrested Singh and charged him with assaulting a police officer, disorderly conduct, threats to do bodily harm, and failure to obey a lawful order of the police. An officer may arrest someone without a warrant in satisfaction of the Fourth Amendment if he has probable cause to believe that the person has committed, or is engaged in committing, a crime. *See Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006). The probable cause determination is objective and involves examining "the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause analysis is based on the "'totality of the circumstances,' which requires that 'the police had enough information to warrant a man of reasonable caution in the belief that a crime has been committed and that the person arrested has committed it.'" *Bolger v. Dist. of Columbia*, 608 F. Supp. 2d 10, 18 (D.D.C. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983); *Barham*, 434 F.3d at 572). The arresting officer's subjective state of mind is irrelevant to the inquiry. *See Devenpeck*, 543 U.S. at 153.

The District argues that Officer Dohare had probable cause to arrest Singh largely based on the fact that at Singh's criminal trial, Singh's counsel conceded that there was enough

evidence to deny a motion for judgment of acquittal on the assault of a police officer charge, and that the trial court denied the same motion as to the threats to do bodily harm charge. *See* Def.'s Mem. Supp. Mot. Part. Summ. J., ECF No. 31, at 16-17. The District, however, overplays the relevance of these events in evaluating the summary judgment motion. Indeed, the trial court also granted Singh's motion for judgment of acquittal on the charges of disorderly conduct and failure to obey a lawful order. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-11, Ex. 10 at 9 (*Singh*, trial tr., Vol. II). And at the close of trial, the court ultimately acquitted Singh of the assault and threatening charges. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-12, Ex. 11 at 17 (*Singh*, trial tr., Vol. III). Further, the District concedes in its memorandum that denial of a motion for judgment of acquittal does not establish that there was probable cause for the arrest as a matter of law. *See* Def.'s Mem. Supp. Mot. Part. Summ. J., ECF No. 31, at 17. There thus remains a genuine dispute as to whether Officer Dohare had probable cause to arrest Singh, as the trial record is not dispositive either way.

Testimony during the trial also points both ways, as Officer Dohare, Singh, and other witnesses each described the events surrounding the arrest differently, particularly on the critical question of Singh's conduct before he was handcuffed and whether Singh spat at Officer Dohare. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-12, Ex. 11 at 7, 9-13 (*Singh*, trial tr., Vol. III). Ultimately, the probable cause question is one for the jury because it requires making credibility determinations about plainly conflicting testimony in the record. Summary judgment therefore is inappropriate as to the constitutionality of the August 4 arrest.

### 3. Qualified Immunity

The District also argues that Officer Dohare is entitled to qualified immunity because the trial court's partial denial of Singh's motion for judgment of acquittal demonstrates that probable

cause for the arrest was "at least arguable." Def.'s Mem. Supp. Mot. Part. Summ. J., ECF No.

31, at 17. The doctrine of qualified immunity protects government officials from suit for civil

damages unless a plaintiff shows that the official violated a statutory or constitutional right, and

that the right was clearly established at the time of the challenged conduct. *See Harlow v.

Fitzgerald*, 457 U.S. 800, 818 (1982). As this Court has explained before, "it is clear that the

right to be free from detention except on reasonable suspicion or probable cause [is] clearly

established." *Polk v. Dist. of Columbia*, 121 F. Supp. 2d 56, 68 (D.D.C. 2000).

It remains a disputed question of fact whether Officer Dohare violated Singh's Fourth

Amendment right through the traffic stop and the arrest. The Court therefore cannot conclude at

this stage that the officer is shielded by qualified immunity. *Cf. Halcomb v. Woods*, 767 F. Supp.

2d 123, 140 (D.D.C. 2011) ("A defendant's entitlement to qualified immunity is a question of

law to be decided by the court, although sometimes … the facts establishing what the challenged

conduct was are legitimately in dispute and must first be decided by the jury before the court

answers the ultimate legal question whether a defendant is entitled to qualified immunity."

(citations omitted)); *Halcomb v. Wash. Metro. Area Transit Auth.*, 526 F. Supp. 2d 20, 21-22

(D.D.C. 2007) ("With these factual matters in dispute in this case, the Court cannot decide before

trial whether [the officer] is entitled to qualified immunity."). As such, the Court denies the

District's request for summary judgment on the qualified immunity issue.[6]

### B.  Municipal Liability

For municipal liability to exist against the District, Singh must do more than just establish

a genuine dispute of fact regarding a predicate constitutional violation. Instead, he also must

---

[6]        The Court notes that the Supreme Court has upheld municipal liability for Section
1983 violations notwithstanding the qualified immunity of individual municipal employees. *See
Owen v. City of Independence*, 445 U.S. 622, 638 (1980); *see also Babb v. Dorman*, 33 F.3d 472,
476 n.7 (5th Cir. 1994).

demonstrate a genuine issue of material fact as to whether "a custom or policy of the municipality caused the violation." *Robinson v. Dist. of Columbia*, 965 F. Supp. 2d 90, 93-94 (D.D.C. 2013) (internal citation omitted). There are four basic categories through which Singh may establish municipal liability against the District: (1) express municipal policy; (2) adoption by municipal policymakers; (3) custom or usage; and (4) deliberate indifference. *See Hunter v. Dist. of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-94 (1978)). In the corrected amended complaint, Singh appears to assert two theories by which the District may be liable: custom and deliberate indifference.[7] The Court addresses both below.

## 1. Custom

The District need not act pursuant to an official policy or regulation to be held liable under Section 1983. Instead, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (citations omitted). To survive summary judgment, plaintiffs must offer evidence of "concentrated, fully packed, precisely delineated scenarios" as proof that an unconstitutional policy or custom existed. *Parker v. Dist. of Columbia*, 850 F.2d 708, 712 (D.D.C. 1988) (internal citation and quotation omitted). To surmount this "high hurdle," *Page v. Mancuso*, No. 12-CV-1606, 2013 WL 6247402, at *11 (D.D.C. Dec. 4, 2013), plaintiffs ordinarily buttress "custom or practice" liability claims with allegations of "practices so persistent and widespread as to practically have

---

[7]    To the extent Singh alleges that the District had an explicit policy that caused the constitutional violations, the Court finds that he has put forth insufficient evidence supporting such a claim. A jury therefore could not reasonably find that the District is liable under Section 1983 based on that theory.

the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  In addition, plaintiffs

must point to specific facts "from which a link between [the] alleged misconduct and a D.C.

policy, custom, or practice may be reasonably inferred."  *Brown v. Wilhelm*, 819 F. Supp. 2d 41,

44 (D.D.C. 2011).

The Court finds that Singh has failed to demonstrate a genuine issue of material fact as to

any custom or practice by the MPD that is "so persistent and widespread" it might establish

municipal liability under Section 1983.  *Connick*, 131 S. Ct. at 1359.  Singh offers no evidence of

unconstitutional traffic stops or arrests against other persons committed by Officer Dohare or his

fellow MPD officers.  He also does not provide reports, analyses, or statistical evidence from

which a jury could reasonably infer that the District had a custom which caused the alleged

unconstitutional behavior here.  Instead, Singh's only evidence of a custom by the District is his

three traffic stops and his arrest.  These relatively isolated situations all directed at a single

individual are insufficient to demonstrate a widespread practice or custom of conduct that might

have caused the potential violations at issue.  *Cf. City of Oklahoma City v. Tuttle*, 471 U.S. 808,

824 (1985) ("[W]here the policy relied upon is not itself unconstitutional, considerably more

proof than the single incident will be necessary in every case to establish both the requisite fault

on the part of the municipality, and the causal connection between the 'policy' and the

constitutional deprivation."); *Carter v. Dist. of Columbia*, 795 F.2d 116, 124 (D.C. Cir. 1986)

(finding that the "assorted actual instances of misconduct demonstrated in this case do not line

up to compose a common or widespread pattern of police misbehavior adequate to establish §

1983 municipal liability"); *Santiago v. Bloise*, 741 F. Supp. 2d 357, 362 (D. Mass. 2010) ("A

municipality cannot be liable for the isolated actions of a single employee." (citation and

quotation omitted)).  The Court therefore grants the District summary judgment on Singh's "custom or practice" theory of municipal liability.

## 2.  Deliberate Indifference

Singh's last refuge for maintaining municipal liability against the District is if he can provide facts from which a jury could reasonably find that the District was deliberately indifferent to likely constitutional violations by Officer Dohare or his colleagues.  The failure to "supervise or discipline city employees can constitute such a policy or custom if it amounts to 'deliberate indifference' towards the constitutional rights of persons in its domain."  *Byrd v. Dist. of Columbia*, 297 F. Supp. 2d 136, 139 (D.D.C. 2003) (citation and quotation omitted).  The District moves for summary judgment on this issue, arguing that it had an adequate policy in place for addressing citizen complaints, and that Officer Dohare was disciplined according to that process.  *See* Def.'s Mem. Supp. Mot. Part. Summ. J., ECF No. 31, at 22.  As such, the District argues that Singh has failed to offer evidence creating an issue for the jury as to whether the District had a policy of deliberate indifference toward officer supervision and discipline that was "the moving force behind the alleged constitutional violation[s]."  *Collington v. Dist. of Columbia*, 828 F. Supp. 2d 210, 213-14 (D.D.C. 2011) (citation omitted).

Deliberate indifference is determined objectively, *see Byrd*, 297 F. Supp. 2d at 139, and it requires a showing that the District "adopt[ed] a policy of inaction when faced with actual or constructive knowledge that its agents will likely violate constitutional rights[.]"  *Poindexter v. D.C. Dep't of Corrs.*, 891 F. Supp. 2d 117, 121 (D.D.C. 2012).  In addition, Singh must show that the District's deliberate indifference was the "moving force of the constitutional violation[s]."  *Carter*, 795 F.2d at 121 (citation and quotation omitted); *see also Robinson v. Dist. of Columbia*, 965 F. Supp. 2d 90, 96 (D.D.C. 2013) ("For there to be municipal liability

under a theory of deliberate indifference, a jury must find from admissible evidence that the District was the moving force behind the alleged constitutional violations based on a theory of deliberate indifference to a known risk of such harm." (citation and quotation omitted)).

A critical question under Section 1983 becomes what did the District know and when. If the District knew about the likelihood of violations too late and had no reason to know of the violations sooner, it is not liable under Section 1983 because to hold otherwise would be to impose *respondeat superior* liability; this is because municipal liability under Section 1983 demands a causal link between the District's actions (or inactions) and the constitutional harm, which *respondeat superior* does not require. *See Warren v. Dist. of Columbia*, No. CIV.A.01-0349, 2006 WL 2568014, at *2 (D.D.C. Sept. 5, 2006) ("Section 1983 liability cannot be based on a theory of *respondeat superior* or vicarious acts. Rather, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." (internal citations and quotations omitted)).

Here, the last alleged unconstitutional event occurred with Singh's arrest on August 4, 2009. The District therefore cannot be deemed deliberately indifferent to knowledge acquired after that date because causation would be missing, unless Singh makes a showing that the District "should have known of the risk of constitutional violations" before this date but failed to have the proper procedures in place. *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1307 (D.C. Cir. 2003); *accord. Garabis v. Unknown Officers of Metro. Police*, 961 F. Supp. 2d 91, 98 (D.D.C. 2013). Although Singh makes no effort to describe the District's policies for receiving citizen complaints, reviewing those complaints, or disciplining officers, it is clear from the record that the District had such procedures in place. The District also had procedures for hearing traffic ticket appeals through the DMV. Singh availed himself to these options on several occasions

during the course of the events at issue, and it is through these procedures that a jury could reasonably find that the District knew or should have known of likely unconstitutional actions by its officers against Singh.

Singh received several traffic tickets between April 2 and August 1, 2009, all of which were dismissed on appeal by a DMV hearing examiner. At the appeal hearings, Singh stated on the record that he was being harassed by Officer Dohare and other officers. For example, on April 12, 2009, Singh was issued a ticket by Officer Dohare for illegal parking in a bus zone.[8] *See* Def.'s Mot. Part. Summ. J., ECF No. 31-6, Ex. 4 (NOI 585090122 and Hearing Record). A DMV hearing examiner dismissed the ticket on May 26, 2009, crediting Singh's claims that he never received the ticket, that Officer Dohare was harassing him after a falling out between the two of them, and that the officer was retaliating against him for filing a complaint by issuing "bogus" tickets. *See id.* On April 20, 2009, Officer Dohare stopped Singh's car and issued him a ticket for failure to signal, but a hearing examiner dismissed that ticket as well on July 10, 2009. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-7, Ex. 6 (NOI 583976444 and Hearing Record). Singh again asserted on the record at the DMV hearing that Officer Dohare was harassing him by issuing baseless tickets. *See id*.

On July 19, 2009, an officer later identified as Officer McConaghey stopped Singh's car and issued him two more tickets, one for obstructed tags and another for an improper turn. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-8, Ex.7 (NOI 583961254, NOI 583961243, and Hearing Record). On August 1, 2009, that same officer issued Singh three additional tickets following another stop. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-9, Ex. 8 (NOI 581471645, NOI

---

[8] Although the Court previously ruled that certain tickets cannot form the basis of Section 1983 liability because Singh did not establish that he was seized before receiving the citations, the fact that the tickets were dismissed and the issues raised during the examiner hearings still can constitute notice to the District regarding potential constitutional violations.

581471656, and NOI 584839485, and Hearing Record).  These tickets, however, were not dismissed by a hearing examiner until October 30, 2009, so they are less helpful for understanding what the District knew during the relevant timeframe, which ended on August 4. Nonetheless, there exists a genuine question for the jury as to whether the District knew or should have known of likely constitutional violations because of the earlier dismissed traffic tickets and the statements credited by the hearing examiner regarding Officer Dohare's continued harassment of Singh.

Furthermore, there is other competent evidence in the record through which a jury could reasonably find that the District knew that Officer Dohare and others might act unconstitutionally toward Singh.  In his affidavit, Singh asserts that he made several complaints about the allegedly unconstitutional traffic stops that a jury could find constituted notice to the District, including complaints to Officer Dohare's district supervisor and the OPC.  *See* Pl.'s Mot. Amend., ECF No. 36-1, at 8 (Singh Aff.).  Plaintiff, however, fails to provide documentary or other illustrative support for these complaints that might shed light on what happened. Indeed, based on the dates provided in the affidavit, it appears that three of the reports Singh cites were actually appeals of traffic tickets before a hearing examiner, which were discussed above.[9]  Nevertheless, Singh asserts in his affidavit that he filed three additional reports with the OPC between July 20 and August 1, 2009.  *See id*.  Each of these complaints related to harassment by Officer Dohare or Officer McConaghey; the evidence therefore suggests that the District was provided with more information about the potentially unconstitutional conduct of these officers.  Viewing the evidence in the light most favorable to Singh, there exists a genuine

---

[9]    These are the entries for May 26, 2009; July 10, 2009; and October 30, 2009.  *See* Pl.'s Mot. Amend., ECF No. 36-1, at 8 (Singh Aff.).

issue of material fact as to whether the filing of this series of complaints gave the District actual or constructive knowledge of likely unconstitutional conduct by its officers.

Similar triable issues of fact arise in regard to other complaints Singh filed. For example, Singh filed a complaint with Officer Dohare's district supervisor on June 8, 2009, regarding the April 20, 2009, traffic stop. *See* Def.'s Mot. Part. Summ. J., ECF No. 31-13, Ex. 12 (Incident Summary Sheet, No. 09003727). In the complaint, Singh stated that Officer Dohare was harassing him by issuing meritless traffic citations. *See id.* Singh also filed a formal report with the OPC on June 9, 2009, complaining again that Officer Dohare made the April 20 traffic stop without cause and for the purpose of harassing him, rather than any legitimate law enforcement purpose. *See* ECF No. 32, Ex. 5 (OPC Complaint No. 09-0316). Following an investigation, the OPC sustained Singh's complaint of harassment in a merits decision dated September 24, 2012, which was more than three years after the original complaint was made. *See id.* Following the merits decision, the MPD initiated an adverse employment action against Officer Dohare, and the officer consented to a penalty of one day suspended without pay, one day of leave forfeited, and one day held.[10] *See* ECF No. 32-1, Ex. 13 (Commander's Resolution Conference Worksheet). Both of these complaints were filed during the key timeframe, so a jury could reasonably find that they constituted notice of likely constitutional violations.

Further, although the record is clear that the District had procedures in place for receiving citizen complaints, Singh's complaints were not adjudicated and acted upon until several years

---

[10] Singh also later filed another report with the OPC about Officer Dohare, complaining that the officer unlawfully arrested him on August 4. *See* ECF No. 32-2, Ex. 14 (OPC Complaint No. 09-0454, Findings of Fact and Merits Determination). The OPC sustained the complaint on August 7, 2013, which was more than four years after the complaint was filed, stating on the record that Officer Dohare harassed Singh through his conduct during the arrest. *See id.* This complaint, however, was filed after the last event at issue, so it is not helpful for determining what the District knew or should have known during the relevant period.

later.  A genuine dispute therefore exists as to whether the amount of time the District took in investigating the complaints and implementing disciplinary action constitutes deliberate indifference, and if so, whether any indifference after receiving the first reports was the "moving force" behind future constitutional violations.  Such triable issues are for a jury, not the Court, to decide.  The Court therefore denies the District's motion for summary judgment on the deliberate indifference theory of municipal liability under Section 1983.

## VI.  CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the District's motion for summary judgment.  Specifically, the Court grants the District summary judgment regarding its vicarious liability for the IIED tort allegedly committed by all John and Jane Doe Officers and the abuse of process tort allegedly committed by all John and Jane Doe Officers except for Officer Myisha McConaghey.  The Court denies the District summary judgment as to its vicarious liability for the alleged abuse of process tort committed by Officer McConaghey. Finally, the Court denies the District summary judgment as to its municipal liability under Section 1983 on the theory of "deliberate indifference," but the Court grants the District's motion on the theory of "custom or practice."  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 8, 2014                                          RUDOLPH CONTRERAS
                                                             United States District Judge